## MICHAEL McHUGH v. FREDERICK L. WELLS, DELAMERE BROWN AND PATRICK BRENNAN.

*Specific performance—Redemption from foreclosure.*

Specific performance of a land contract cannot be enforced by the seller unless he puts or offers to put the purchaser in possession.

A bill in equity is not needed to enable a mortgager to redeem from a foreclosure sale within the period allowed for redemption.

Appeal from St. Clair. Submitted June 14. Decided June 21.

SPECIFIC PERFORMANCE. Bill dismissed. Complainant appeals.

*Chas. K. Dodge, O'B. J. Atkinson* and *E. G. Stevenson* for complainant.

*Brown & Farrand* for defendant.

CAMPBELL, C. J. The bill in this case was filed June 19, 1875, for the purpose of enforcing a contract concerning land under these circumstances:

August 27th, 1874, Wells held a mortgage on the land in controversy, which was then owned by McHugh. McHugh and his wife did not then live harmoniously together, and she, although certain other land had been conveyed to her as a consideration for signing a conveyance to a purchaser, refused to join in it. McHugh

bargained the premises to Brennan for $2175, payable $150 down, and so much of the balance as exceeded the Wells mortgage was to be secured by mortgage in annual instalments of $200. In order to avoid the claims of Mrs. McHugh, the land was to be sold on a foreclosure of the Wells mortgage, and title made thereunder. To this Wells consented, and a few days thereafter McHugh gave Wells a general power of attorney, and left with declarations that he should not come back. He did however return to the land in question as will appear hereafter. At the time of the bargain McHugh and wife lived in Port Huron. The premises in controversy are about twenty miles distant.

Wells soon commenced advertising for the interest in arrears, and a sale was made late in the fall to defendant Brown. Wells assigned the mortgage to Brown, who subsequently in 1875 foreclosed for the whole. The complainant has not seen fit to introduce most of these documents into the printed record, and his bill is vague as to dates, as well as some other things. The bill was filed in May or early in June, 1875, shortly after the second foreclosure, and several months before the redemption expired under the first.

McHugh claims that he put Brennan in possession, as he was bound to do. But before Brennan had got into control of the premises Mrs. McHugh assumed possession and by threats and acts of violence kept him out. McHugh declined to interfere, but advised Brennan to resort to legal compulsion. It being discovered that no possession could be secured, Wells paid back to Brennan the $150 which he had paid down, and cancelled the agreement.

McHugh came back to the farm in the spring of 1875 and has lived there with his wife ever since. According to his own story he knew of Brown's proceedings immediately thereafter, and then knew the contract was cancelled.

McHugh by this bill insists on the enforcement of

the Brennan contract, and makes no offer to redeem from Brown.

In our opinion it was McHugh's business to control his own family and to put Brennan in possession before he could insist on his contract. After he came back to the farm in the spring of 1875 he knew of what had taken place, but made no offer or attempt to put Brennan in possession, and makes no such offer by his bill. By going back into possession and remaining there with his wife he impliedly recognized the termination of the contract.

He had thereafter merely his former right to redeem the premises from the foreclosure sales, the regularity of which is not impeached. No bill was needed for that purpose, and this bill is not so framed. Neither Wells nor Brown had any further concern with McHugh than for Brown to accept redemption if he chose to make it. When the bill was filed he had a long period in the future in which he could have redeemed, and no one pretended he was then either cut off, or compellable to pay at once.

We do not see that when his bill was filed he had any cause of grievance, or any occasion for filing it. In the absence of any tender or other equivalent the pendency of this suit can have had no effect on the proceedings.

The case for specific performance is not made out, and in the absence of any other equity properly averred and proved, we think the bill was rightly dismissed.

The decree must be affirmed with costs.

The other Justices concurred.