BERTHA DOGGE, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA AND S. M. MELICK, SHERIFF, DE-FENDANTS IN ERROR.

1.  **Witnesses.**  Under the provisions of the statutes of this state the parties to a civil action are competent witnesses, and each may be compelled to testify in favor of the adverse party the same as any witness.

2.  **Notary Public:**  DEPOSITION:  CONTUMACIOUS WITNESS.  A notary public has power to commit for contempt a witness who refuses to give his deposition in a proper case.

ERROR to the district court for Lancaster county.  Tried below before POUND, J.

*Billingsley & Woodward* and *H. J. Whitmore,* for plaintiff in error.

*Field & Harrison* and *W. J. Houston,* for defendant in error.

REESE, J.

On the 23d day of July, 1886, plaintiff filed her petition for a writ of habeas corpus before the Honorable S. B. Pound, judge of the District Court of the Second Judicial District, as follows, to-wit:

"Your petitioner, Bertha Dogge, respectfully represents to S. B. Pound, judge of the district court for the county of Lancaster, that she is unlawfully deprived of her liberty by one S. M. Melick, sheriff of Lancaster county, in this state.

"Your petitioner alleges the facts in regard to said detention to be as follows, to-wit: This petitioner is one of the defendants in an action pending in the district court of said county, wherein Hart Bros. et al. are plaintiffs and Bertha Dogge et al. are defendants; that one of the plaintiffs in said action on the 16th day of July, 1886, served upon the attorneys of your petitioner a notice that they would on the 21st day of July, 1886, at the office of James L. Caldwell, in the city of Lincoln, Nebraska, take the deposition of your petitioner; that on the 19th day of July, 1886, an alleged subpœna commanding your petitioner to appear before W. J. Houston, a notary public, at the office of J. L. Caldwell, in the city of Lincoln, in said county, on the 21st day of July, 1886, at nine o'clock in the forenoon, and give evidence in a suit between Hart Bros., plaintiffs, and Bertha Dogge and Otto H. Dogge, defendants, on the part of said Hart Brothers, plaintiffs.

"That your petitioner failed and refused to comply with the order of said pretended subpœna, and thereupon the said notary public, W. J. Houston, issued a writ of attachment, directed to the sheriff of said county, and caused your petitioner to be arrested and brought before him to give said deposition; that your petitioner refused to be sworn in said case and refused to answer the questions put to her by the said notary public and by the attorneys for

the said Hart Brothers; that thereupon the said notary public, W. J. Houston, made out a writ of commitment, directed to the sheriff of Lancaster county, the said S. M. Melick, commanding him to take your petitioner into his custody and to imprison her in the county jail of said county until such time as she would be willing to give her said deposition, or was otherwise released by law. That this petitioner is set out in the notice to take depositions served herein in the pretended subpœna served upon her, and in all the papers filed herewith, as one of the parties defendant to the action; that there is no provision of the statute of the state of Nebraska whereby a defendant to an action can be compelled to testify in a cause before the time of trial thereof; that your petitioner is a resident of Lancaster county, Nebraska, is in good health, and capable of being present at the trial of the cause set out in said pretended subpœna, and has no intention of being absent from the county when said cause comes up for trial, of all of which the said attorneys for plaintiffs and the said notary public, W. J. Houston, had due notice in writing before the issuing of said writ of attachment, and before the issuing of said commitment; that the action of said notary public, W. J. Houston, in committing your petitioner to jail was illegal and unwarranted by law, and that the detention of your petitioner by said S. M. Melick is therefore illegal and wrong. A copy of the warrant of commitment is hereto attached marked Exhibit 'A.'

"Your petitioner therefore prays that a writ of habeas corpus may be issued, and that she may be discharged from said unlawful imprisonment."

A writ was issued, but upon a hearing plaintiff in error was remanded to the custody of the sheriff, and she brings error to this court.

We have set out the petition in full in order that it may appear just what the legal propositions involved in the case are.

From the record before us it appears that a notice to take the deposition of plaintiff and Otto H. Dogge was given their attorneys, and a subpœna was served upon them. These papers were in the usual form and need not be further noticed. Prior to the time fixed for taking the deposition, plaintiff and Otto H. Dogge served upon the notary public a notice which we also copy in full. It is as follows:

"July 21st, 1866.

"To William J. Houston,

Notary Public, Lincoln, Nebraska.

"We have been notified and summoned to appear at your office this day for the purpose of giving our testimony on behalf of the plaintiffs in the above entitled action; the above-named plaintiffs are all non-residents of this state; we are citizens and residents of the city of Lincoln, Lancaster county, Nebraska; are in good health, and have no intention of changing our residence.

"Under and by virtue of the laws of this state, there is no legal or sufficient reason for the taking of our deposition at this time, or our evidence had in this cause, before the trial of the same.

"We respectfully decline to appear at your office as requested in said summons, and decline to give our evidence in said cause at this time.

"You are hereby notified that we will hold you responsible in damages as such officer, for any and all acts, official or otherwise, in which it may be attempted to coerce us into giving our testimony in this case prior to the hearing of said cause in our district court.

"We give you this notice prior to the hour set for our appearance before you, that you may act advisedly in the premises.

BERTHA DOGGE,
OTTO H. DOGGE."

Upon plaintiff's failure to appear at the time fixed for taking her deposition, an attachment was issued by the notary and she was arrested and taken before him and required to be sworn and give her testimony, which she refused to do. She was then found guilty of contempt by the notary, and ordered to be committed to prison until she should consent to testify. The record made and entered by the notary is as follows:

"The said Bertha Dogge being brought before me on said attachment and by me being requested to be sworn and testify in the above cause of Hart Brothers, plaintiffs, and Bertha Dogge and Otto H. Dogge, defendants, refused to be sworn and refused to testify as a witness in the above action.

"Whereupon, I found Bertha Dogge guilty of contempt, and entered the following judgment:

"It is therefore ordered and adjudged by me, that the said Bertha Dogge be imprisoned in the county jail of Lancaster county, Nebraska, there to remain until she shall submit to be sworn to testify and to give her deposition in the above entitled cause.

(Seal.)                            W. J. HOUSTON,
                                       Notary Public."

The warrant of commitment is in the usual form.

In the brief and argument of plaintiff in error, she says: "Two important questions are brought before this court for decision in this case.

"1. Whether the adverse party to a suit can, in this state, be compelled to testify?

"2. Has a notary public in this state power to commit for contempt, a witness who refuses to give his deposition?"

These questions alone are presented, and they alone were argued at the bar of the court, and they alone will be considered.

We are thus specific for the reason that, in the consultation room, the suggestion was made that the action in which the deposition was sought was perhaps against husband and wife, that relation existing between plaintiff and Otto H. Dogge, and that, therefore, plaintiff might be protected by the provisions of section 331 of the civil code, which provides in substance that the wife can in no case be a witness against the husband except in a criminal proceeding for a crime committed by him against her. But upon a careful examination of the petition, abstract, and briefs, we find that this question is not presented in any form. There is no mention of any such relation existing between the parties named, and therefore that question cannot enter into the case, and is not decided.

First, then, can the adverse party to a suit be compelled to testify?

Section 328 of the civil code provides that all persons with sufficient capacity to understand the obligation of an oath, are competent witnesses in all cases, civil or criminal, except as is otherwise declared. Neither in this section nor in any other part of the law of evidence, as regulated by the statutes of this state, do we find any exception which would render a party to an action an incompetent witness. There is no express provision of law rendering parties to an action competent witnesses, excepting as contained in the section above referred to. It is conceded that such a person is a competent witness when called by the adverse party if he willingly testifies, but it is insisted that the law nowhere gives one party to an action the right to call and examine an opposite party without his consent. From an examination of the statute we are convinced that it was the intention of the legislature, in the enactment of the chapter on evidence, to remove every barrier to the discovery of truth, where the parties to the action have equal opportunity to testify. And where necessary, either party may call the other to testify as to

facts exclusively within his knowledge, provided the questions are not privileged.    This intention is clearly shown by section 398, which is as follows: "In addition to the above remedies, if a party to a suit in his own right, on being duly subpœnaed, fail to appear and give testimony, the other party may, at his option, have a continuance of the cause as in case of other witnesses, and at the cost of the delinquent."    This section would be without effect and the "remedy" given by it would be no remedy at all, if when the party appeared in answer to a subpœna he could refuse to be sworn and thus deprive a party of the benefits of the rights given by the provision.

The next question, as to the power of a notary public to commit for contempt, a witness who refuses to give his deposition, involves the whole judicial power of that officer; for, if he has any power of the kind mentioned, the right to commit for contempt is clearly given by sections 356 *et seq.*, civil code.    The contention that a notary public cannot exercise judicial functions is based upon section 1 of article 6, of the constitution of the state, which is as follows:

"The judicial power of this state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and such other courts inferior to the district court as may be created by law for cities and incorporated towns."

It is said that the commitment of a person to jail for a contempt presupposes a judicial inquiry, judgment and sentence, and that the officer who exercises these functions must of necessity do so in the exercise of judicial power. This is true; and if the constitution must be treated as limiting the exercise of all judicial functions to the courts named in the section above quoted, then the position of plaintiff in error is unassailable, unless another provision of the constitution hereafter noticed, continues in force the laws conferring judicial powers which were in existence at the

time of its adoption. But the question might arise as to whether or not such is the purpose of this section, or whether it does not have reference to the creation and organization of courts for trial of causes, civil and criminal, and the administration of justice in accordance with the forms of law in the protection of rights and the enforcement of remedies? If it was the intention of the framers of the constitution to prevent the exercise of *all* judicial functions except by the courts referred to, and to prohibit their exercise by *all* persons except such courts, then indeed would the administration of the law be exceedingly difficult. As illustrative of the idea here suggested, we might refer to the matter of the appraisement of property.

In *Sessions v. Irwin*, 8 Neb., 5, it is held that appraisers selected by a sheriff to appraise real estate levied upon by him, act judicially in making the appraisement. If this is true they must in some degree exercise judicial power, and if true why do not other appraisers act judicially ; such as in the appraisement of lands taken for drains, for school house sites, for the establishment of roads, for the right of way for railroads, changing the grade of streets, of property for county buildings, or of university and school lands, or on the foreclosure of tax liens, or of property taken in attachment or replevin, or of homesteads, estrays, effects of decedents, estates assigned for the benefit of creditors, or of animals killed by live stock sanitary commission ?

Again, county boards in the discharge of their duties are continually called upon to exercise judicial functions. The same may be said of many other officers, and persons, whom we need not mention. Are their acts of the character named all void by reason of this section of the constitution? We think not.

But it may be insisted that the judicial functions of a notary public or board of county commissioners, in imprisoning for contempt, are the functions of a *court*, and therefore are not governed by the same principles as those

to which we have referred.    While not adopting such a suggestion, we need only say that if this is true, yet we think the judicial functions of a notary public are continued by section 4 of article 16, of the constitution.    This section provides that "all existing courts which are not in this constitution specifically enumerated, and concerning which no other provision is herein made, shall continue in existence, and exercise their present jurisdiction until otherwise provided by law."

The law authorizing the imprisonment of witnesses for refusing to testify or give deposition, and also the law creating the office of notary public, with the powers and duties thereof, were in force at the time of the adoption of the present constitution.    Now, if a notary public in the exercise of the judicial functions or power given by law, is a *court* as claimed by plaintiff in error, then we must hold that the authority and power of that court is " continued in existence," and will be authorized to "exercise their present jurisdiction until otherwise provided by law," by virtue of the section of the constitution last above quoted.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.